IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA,              ) | |
| )  | |
| Plaintiff,              ) | |
| )  | |
| v.              ) | Cr. Action No. 22-11-1 (MN) |
| )  | |
| OLUGBENGA LAW L,              ) | |
| also known as "Razak Aolugbengela,",              ) | |
| )  | |
| Defendant.              | |

## MEMORANDUM ORDER

At Wilmington, this 3rd day of August 2022;

Pending before the Court is the motion of Defendant Olugbenga Lawal for *de novo* review of his detention (D.I. 75), which requests that the Court order his release consistent with the conditions listed in the pretrial services report ("PS3") prepared by the probation office in the Southern District of Indiana. For the reasons discussed below, after *de novo* review of Defendant's detention, the request for release is DENIED.

**I.      BACKGROUND**

On February 1, 2022, a grand jury in the District of Delaware returned an Indictment charging the Defendant and three co-defendants with conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h). After being unable to locate Defendant for several months, he was arrested in the Southern District of Indiana on or about May 12, 2022. He had an initial appearance in that district the next day. *See United States v. Lawal*, No. 22-mj-425-TAB (S.D. Ind.) ("the S.D. Ind. Case"), D.I. 1. A contested detention hearing was held before Magistrate Judge Mark J. Dinsmore on May 24, 2022.[1] After hearing the proffers and arguments of the

---

[1]      A transcript of that hearing was attached as Exhibit 1 to the defendant's motion. (*See* D.I. 75-1 (hereinafter "Tr.")).

parties, the magistrate court granted the government's motion. *See* Exhibit A (S.D. Ind. Case D.I. 11 ( detention order)). The magistrate judge based his decision on the millions of dollars that flowed through bank accounts the Defendant controlled, his significant ties to Nigeria, his lack of legitimate employment history, his lack of a stable residence, and his past use of an alias. (Tr. at 19:11-21 :5). After his transfer to the District of Delaware, the Defendant filed the instant motion. (D.I. 75).

## II. LEGAL STANDARDS

Pursuant to the Bail Reform Act, a court must detain a defendant if it finds that either (a) there is clear and convincing evidence that no combination of conditions will ensure the safety of the community if he is released, or (b) a preponderance of the evidence demonstrates that no combination of conditions will ensure the appearance of the defendant as required. 18 U.S.C. §§ 3142(e) & (f); *see also United States v. Himler*, 797 F.2d 156, 161 (3d Cir. 1986) (holding that the standard for determining whether the defendant is a risk of non-appearance under § 3142(e) is a "preponderance of the evidence").

There are four statutory factors that a court must consider in determining whether the defendant should be detained pending trial under § 3142: ( 1) the nature and circumstances of the offense charged, (2) the weight of the evidence against the person, (3) the history and characteristics of the person, and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. §§ 3142(g)(l)-(4). In considering those factors, the court is not bound by the "rules concerning the admissibility of evidence." 18 U.S.C. § 3142(f). "[E]ither party may proceed by proffer and the rules of evidence do not apply." *United States v. El-Hage*, 213 F.3d 74, 82 (2d Cir. 2000).

If detained by a magistrate judge, a defendant may appeal to the district court. 18 U.S.C. § 3145(b). A district court's review is *de novo*, although it may rely on the evidence presented

before the magistrate judge without conducting another hearing. *United States v. Delker*, 757 F.2d 1390, 1394-95 (3d Cir. 1985); *United States v. Koenig*, 912 F.2d 1190, 1192 (9th Cir. 1990). "In most cases the district court will find it useful to consider carefully the decision and reasoning of the magistrate." *Delker*, 757 F.2d at 1395.

## III.    DISCUSSION

The Court considers each of the factors set forth at 18 U.S.C. § 3142(g) in turn. The facts recited are those proffered by the parties at the contested hearing, the current motion papers, and the PS3.

### A.    Section 3142(g)(l) – the Nature and Circumstance of the Offense

The Defendant is an important member of an international organization based in West Africa ("the criminal organization") that obtains and then launders millions of dollars derived from internet-based fraud such as romance scams and business email compromises.[2] The perpetrators of those crimes are spread across the United States and the world, including in Nigeria where the Defendant has strong ties. The victims of those crimes are both individuals and businesses. Many of the individuals who fell prey to the romance fraud perpetrated by this criminal organization are elderly victims who lost their life's savings to the fraud.

Over the course of the Defendant's involvement in the conspiracy, he personally received or deposited more than $3 million into bank accounts opened in his name and in the names of his business entities, Luxe Logistics LLC and Yankee Imports. The Government believes that the entirety of those proceeds are tied to the internet-based fraud perpetrated by the criminal

---

[2]    The government does not contend currently that the Defendant was individually perpetrating the internet-based fraud. Rather, it asserts that unknown co-conspirators throughout the world perpetrated the fraud and the Defendant was a recipient of the fraudulently obtained proceeds and an integral part of the criminal organization's efforts to launder those proceeds. (D.I. 78 at 2, n.1).

3

organization. More than $2 million of the deposits were withdrawn in cash and remain largely unaccounted for.

The Defendant's importance in the criminal organization is demonstrated by the fact that he received money directly from defrauded victims as well as from lower-ranking members of the criminal organization. It is believe that, as a higher-ranking member of the organization, Defendant received a "cut" of the fraudulently obtained proceeds and, after taking that "cut," helped to launder the proceeds and repatriate the funds to West Africa largely by purchasing cars with the fraudulent proceeds and shipping them overseas to other members of the criminal organization.

The criminal organization apparently has obtained and used fraudulent identification and travel documents to aid in its internet-based fraud and money laundering efforts. The Government proffers that the organization has obtained false state driver's licenses and false passports, both to create the online personas used to perpetrate its romance scams and to register shell business entities and open bank accounts under untraceable aliases. (D.I. 78 at 5).

In short, the nature of the criminal organization and its crimes has provided Defendant with resources to flee from prosecution. Defendant, either personally or through his co-conspirators, has access to millions of dollars, fraudulent travel documents, and co-conspirators located across the country and the world. Moreover, the Defendant, who is not an American citizen, appears to be facing a substantial guidelines term of incarceration and likely deportation.[3] The combination

---

[3] The Defendant faces a 20-year statutory maximum term of imprisonment, *see* 18 U.S.C. 1956 §§ (a)(l) & (h), and the government's conservative guidelines' calculation results in a guidelines sentence that exceeds ten years. (D.I. 78 at 5).

of the lengthy sentence facing the Defendant and his likely deportation provides the Defendant with a strong incentive to flee prosecution.[4]

### B. Section 3142(g)(2) – the Weight of the Evidence

The two-year investigation into the criminal organization uncovered substantial evidence against the Defendant. Bank records show that he opened numerous bank accounts in his own name and in the name of his business, Luxe Logistics LLC. (PS3 at 1).[5] The records show that over three years, he deposited more than $3 million, most of which was procured by the criminal organization through internet-based fraud. The bank records apparently demonstrate transactions between the Defendant and (i) his co-defendants in this case, (ii) other individuals facing similar charges in other districts, and (iii) unindicted coconspirators. (D.I. 78 at 6). Nothing in the bank records suggest any legitimate source for those funds. (*Id.*).

Additionally, witnesses have attested to Defendant's involvement in the criminal organization, including his role in using the criminal proceeds to purchase cars to send overseas. Those witnesses, moreover, are purportedly corroborated by text messages that show one of the co-defendant's instructing another co-defendant to send the Defendant tens of thousands of dollars through commercial shipping services and by financial records that show the Defendant's active involvement in purchasing cars. (D.I. 78 at 7).

---

[4] One member of the same criminal organization to which the Defendant belongs pleaded guilty in this District in October 2021. *See United States v. Kuye*, No. 20-cr-57 (D. Del.). That defendant, a citizen of Nigeria who likewise was facing a lengthy prison sentence and likely deportation, failed to appear for his sentencing in February 2022 and has not been located since despite the fact that he had surrendered his travel documents as part of his pre-trial release. (D.I. 78 at 6, n.2).

[5] The government understands that, given the personally identifying information contained in that document, defense counsel submitted the PS3 directly to the Court and did not file it on the public docket as an exhibit.

The proffer of bank records in the Defendant's name irrefutably showing his receipt of fraud proceeds coupled with the length of time the Defendant actively engaged in this criminal conspiracy indicates that Defendant was an active participant in the activities of the criminal organization.

### C. Section 3142(g)(3) – the Defendant's History and Characteristics

This factor considers, among other things, "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, [and] past conduct[.]" 18 U.S.C. § 3142(g)(3)(A). Here, the Defendant's history and characteristics, including his strong ties to Nigeria, recent trips overseas, access to money and false identification documents, his education, and his past evasive conduct, all suggest the means, wherewithal, and incentive to flee from prosecution.

Defendant is a 31-year-old Nigerian citizen. He arrived in the United States in 2015 and is currently a lawful permanent resident of this country. The Defendant, however, has maintained strong family ties to Nigeria. He has regular contact with his mother who lives in Nigeria, where the leaders of the criminal organization are located. His brother also remains in Nigeria. Defendant's family life in Indiana, moreover, appears unsettled. The Defendant is divorcing his wife with whom he shares one child. At the time of his arrest, the Defendant was living with a different woman, who reports that she is imminently expecting (or recently had) a child with the Defendant. The nature of that relationship is unclear, given that both the Defendant and the woman told a United States Probation Officer in Indiana that she and the Defendant were "only friends," (PS3 at 1-2), despite the woman later writing a letter to this Court describing their relationship as "romantic" (D.I. 75-2 at p.1).

Defendant has made at least four overseas trips over the past two years. Those trips appear to include two extended trips to Nigeria, as well as two short trips to Cancun, Mexico. As noted

6

already, Defendant has access to an un-identified amount of money that he could use to flee from prosecution, including up to $2 million dollars in cash withdrawals remain largely unaccounted for as well as potential money from co-conspirators looking to help him.

That the Defendant has offered to surrender his passport does not address the issue sufficiently. As noted above, the criminal organization is known to obtain false identification and travel documents. Moreover, the government proffers that other individuals who have been indicted in this District and others who have ties to this criminal organization have already fled prosecution despite surrendering their travel documents. And the concern that the Defendant would obtain suspect identification documents or assume an alias is not merely hypothetical. The Government has proffered that Defendant attempted to obtain a Texas driver's license despite his admitted residence (and continued residence) in Indiana and that he has previously used (and been criminally charged) under an alias. (D.I. 78 at 8-9).

The Defendant's conduct also supports detention. As the Government asserts, the Defendant is not an unwitting pawn taken advantage of by others; he is 31-year-old university graduate. (D.I. 78 at 9 (citing Tr. 3:8-12)). He set up business entities and bank accounts to disguise the nature of the criminal organization's fraudulently-obtained proceeds and engaged in a sophisticated international car shipping scheme to launder the proceeds.

In early March 2022, the FBI began reaching out to Defendant on phone numbers and email addresses connected to him through his bank accounts and business entities. The FBI left voicemail and email messages stating that an active arrest warrant had been issued and Defendant should turn himself in to authorities. On or about March 17, 2022, an FBI special agent spoke on the phone with someone who identified himself as Mr. Lawal and again advised that there was an active warrant out for his arrest. The Defendant at his detention hearing did not dispute receiving

7

those communications; he simply contended he thought the communications "were not legitimate." (Tr. 15:8-11). The Defendant did not turn himself in to authorities.

For the following two months, the FBI continued to search for the Defendant through in person surveillance at locations associated with the Defendant and through cell site location information warrants on a phone number associated with the Defendant. (D.I. 78 at 10). Those efforts led to an apartment building on Hector Place in Indianapolis, Indiana. When law enforcement arrived at the address to arrest Defendant, it appears that he engaged in some minor efforts to avoid apprehension.

The Defendant's history and characteristics therefore demonstrate that he has the incentive, means, and capacity to flee from prosecution.

### D.  Section 3142(g)(4) – the Nature and Seriousness of the Danger to Any Person or the Community

The Government does not seek detention of Defendant based on potential danger to the community. When that is the case, a court need not consider this factor. *See, e.g., United States v. Aziz*, 2022 WL 1056102, at *3 n.1 (5th Cir Apr. 8, 2022); *United States v. Boustani*, 356 F. Supp. 3d 246, 252 (E.D.N.Y. 2019).

### E.  The Government Has Established That It is More Likely Than Not That There Is No Condition Or Combination of Conditions That Will Reasonably Assure the Defendant's Presence as Required

The magistrate judge determined that the government met its burden at the contested detention hearing to demonstrate that there is no combination of conditions that would reasonably assure the Defendant's continued presence as required. In his motion, the Defendant primarily relies on the recommendation of the United States Probation Office in the Southern District of Indiana for release on conditions to support his argument. The Probation Office, however, made its recommendation without the benefit of the Government's proffers of evidence. After hearing

the proffer, the magistrate judge determined that the recommendation was not appropriate and that no combination of conditions can account for Defendant's overseas ties and access to a criminal organization with the means – financial and criminal – to support one of its members' flight from justice.

Defendant also argues that his three co-defendants in this matter are each on pretrial release. As the Government aptly points out, however, none of those defendants made the choice that the Defendant did-to purposefully ignore a federal arrest warrant for months. (D.I. 78 at 11-12). His co-defendants were either arrested without incident at a known location or turned themselves in upon getting notified by the FBI that a warrant was out for their arrest. (*Id.*). Moreover, it appears that accounts controlled by the Defendant received more money than those of his co-defendants and that the Defendant converted more money to untraceable cash than his co-defendants. And the Defendant, unlike his co-defendants, has twice traveled to West Africa in the past two years where he maintains close ties and where the criminal organization is apparently located. (*Id.*). Thus, the Defendant presents a greater risk of flight than his co-defendants.

## IV. CONCLUSION

Having considered the factors required and having reviewed Defendant's detention *de novo*, a preponderance of the evidence demonstrates that no combination of conditions will ensure the appearance of the Defendant. THEREFORE, IT IS HEREBY ORDERED that Defendant's Motion for *de novo* Review of His Detention Order (D.I. 75) requesting an order releasing him consistent with the conditions listed in the PS3 is DENIED. Defendant shall remain detained.

*/s/ Maryellen Noreika*
The Honorable Maryellen Noreika
United States District Judge